# United States Court of Appeals
## For the First Circuit

No. 23-1018

MÓNICA PÉREZ-PÉREZ, personally and in representation of her
minor son AMCP; JOSÉ MANUEL CARABALLO-NEGRÓN, personally and in
representation of his minor son AMCP; AMCP,

Plaintiffs, Appellants,

v.

HOSPITAL EPISCOPAL SAN LUCAS, INC., d/b/a Hospital Episcopal San
Lucas-Ponce; DR. MARYROSE CONCEPCIÓN-GIRÓN; BEAZLEY USA
SERVICES, INC., d/b/a Beazley Group; RICHARD DOE; CONJUGAL
PARTNERSHIP CONCEPCIÓN-DOE; A, B AND C CORPORATIONS;
UNKNOWN INSURANCE COMPANIES A THROUGH C,

Defendants, Appellees,

JOHN DOE 1; JOHN DOE 2; JOHN DOE 3,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]
[Hon. Marshal D. Morgan, U.S. Magistrate Judge]

Before

Barron, Chief Judge,
Kayatta and Montecalvo, Circuit Judges.

David Efron for appellants.
Luis A. Rodríguez Muñoz, with whom Eduardo A. Vera Ramírez

and <u>Landrón Vera, LLC</u> were on brief, for appellees Hospital Episcopal San Lucas and Beazley Insurance, Inc.

<u>Anselmo Irizarry Irizarry</u> for appellee Maryrose Concepción-Girón.

---

August 13, 2024

---

**Kayatta**, **Circuit Judge**. This case is about who decides whether a Puerto Rico statutory cap on certain medical malpractice damages applies to defendant Dr. Maryrose Concepción-Girón ("Dr. Concepción"). Dr. Concepción delivered plaintiffs' baby at Hospital Episcopal San Lucas-Ponce ("HESL" or "the hospital"). The baby suffered birth injuries and plaintiffs sued, alleging malpractice for which they sought some $6,000,000 in damages. Under Puerto Rico law, though, plaintiffs' recovery would be capped at $150,000 if Dr. Concepción was a faculty member at HESL at the time of the birth.

The applicability of this statutory cap was the subject of much dispute below. Defendants maintained that Dr. Concepción was indeed a member of HESL's teaching faculty at the relevant time, but could produce no contract to that effect. In the absence of a contract, the district court ordered a pretrial "evidentiary hearing," after which it concluded that Dr. Concepción was a faculty member when she delivered plaintiffs' baby, and thus was covered by the statutory cap on medical malpractice damages. In so doing, the district court adopted a magistrate judge's Report & Recommendation ("R&R"), which stated that "[t]he applicability of the statutory cap is a matter of law."

Plaintiffs now appeal, arguing that the applicability of the statutory cap is not a matter of law but a question of fact and that the district court erred by deciding the issue itself

instead of leaving it for the jury. We agree with plaintiffs that the applicability of the damages cap hinges on a classic question of fact: whether Dr. Concepción was a member of the HESL teaching faculty when she delivered plaintiffs' baby. That factual question is not one-sided, and should have been resolved by the jury before the district court drew a legal conclusion about the applicability of the damages cap. We therefore vacate the district court's order declaring Dr. Concepción covered by the statutory damages cap. Our reasoning follows.

## I.

## A.

Dr. Concepción is an OB/GYN with a private practice and admitting privileges at HESL. Plaintiff Mónica Pérez-Pérez ("Pérez") began seeing Dr. Concepción in her private practice for prenatal care in September 2014. On April 29, 2015, when Pérez was nearly 41 weeks pregnant, Dr. Concepción instructed her to go to HESL for labor induction. There, Dr. Concepción took part in the delivery of Pérez's son, "AMCP." The baby suffered birth injuries, which plaintiffs claim stem from "negligent delivery and negligent care performed by Dr. Concepción and [HESL]."

On January 11, 2018, Pérez and AMCP's father, José Manuel Caraballo-Negrón -- by then both living in Florida -- filed a medical malpractice suit against HESL and Dr. Concepción in the

- 4 -

U.S. District Court for the District of Puerto Rico.[1]  On behalf of themselves and their minor son, they alleged that defendants had "fail[ed] to recognize that Mrs. Pérez was not a suitable candidate for an induction of labor" and that Dr. Concepción had used "persistent traction on the baby's head and neck" during the delivery.  Plaintiffs contended that these mistakes caused the baby two brachial plexus injuries, "which may result in lifelong disabilities."  Citing pain and suffering, future expenses, and loss of potential to generate future income, plaintiffs estimated AMCP's damages "at a sum in excess of $3,000,000."  Plaintiffs also estimated the "emotional and economic damages" suffered by AMCP's parents "at a sum . . . in excess of $1,500,000 each."

**B.**

In an effort to spur the development of medical education and services in the Commonwealth, Puerto Rico established a number of Regional Academic Medical Centers ("RAMCs"): groups of "one . . . or more hospitals, health facilities, medical groups and health professionals education and training programs related to an accredited School of Medicine whose mission is to educate, conduct research and provide health services."  P.R. Laws Ann.

---

[1]  Plaintiffs also named as a defendant Beazley USA Services, Inc., d/b/a Beazley Group, which insured HESL at the time of the delivery.  They additionally named "John Does 1, 2, and 3 and A, B, C Corporations . . . whose identities are presently unknown, which by their negligent acts or omissions caused or contributed to the damages claimed."

tit. 24, § 10031(b) (2006). Puerto Rico's Law 136 of July 27, 2006 ("Law 136") caps the damages recoverable against RAMCs and their medical students, residents, and faculty members "for the medical procedures practiced in said [RAMCs] in the exercise of their teaching duties." Id. § 10035 (2011).

Under Law 136, damages are limited to "$75,000 for damages suffered by a person and up to $150,000 when the damages were suffered by more than one person or when there are several causes for action to which a single injured party is entitled." Id. In cases where there are multiple defendants covered by the damages cap (say, a hospital and a doctor), plaintiffs may only recover the limit from the defendants as a group, rather than from each individual defendant. See Ortiz Santiago v. Hosp. Episcopal San Lucas, Inc., 205 P.R. Dec. 222, 236 (2020).

## C.

The applicability of this statutory cap was the subject of much dispute below. In her answer to plaintiffs' complaint, Dr. Concepción asserted that she was "a faculty member of Hospital San Lucas' teaching staff ergo; covered by Public Law 136." The hospital, on the other hand, answered that Dr. Concepción "was a physician with privileges at the time of the events in [HESL] not an employee of the institution," with no assertion that she was a member of the teaching staff. And while the parties were preparing for trial, the Supreme Court of Puerto Rico held in a different

- 6 -

medical malpractice case that HESL is an RAMC within the meaning of Law 136 by virtue of a consortium between the hospital and Ponce School of Medicine.  See Ortiz Santiago, 205 P.R. Dec. at 230.

Following that decision by Puerto Rico's Supreme Court, the parties entered settlement discussions supervised by a magistrate judge.  While there was no disputing HESL's status as an RAMC, Dr. Concepción's exact role at the hospital was both murky and consequential for calculating damages.  Defendants contended that the entire case would be capped at $150,000 in damages, claiming that Dr. Concepción had been part of HESL's medical faculty since 2006.  Plaintiffs maintained that the cap would not apply to Dr. Concepción, since she was "a private doctor, working on a private patient, who was not acting as a part of the [m]edical [f]aculty of [HESL] at the time of the incident."

Summing up the settlement discussions, the magistrate judge concluded that whether or not Dr. Concepción was a member of HESL's medical faculty in 2015 "is a question of fact that can be resolved by simply looking at her contract with the hospital." But there was one problem:  "[T]he contract was not exchanged in discovery and its whereabouts [were] not immediately ascertainable."  Though the court granted a continuance for defendants to search for the alleged contract, they were unable to locate it.  The parties proceeded to prepare for trial, which was set for March 1, 2022.

- 7 -

On December 29, 2021, defendants presented what they claimed to be a copy of a 2006 letter from the president of Ponce School of Medicine (the medical school affiliated with HESL) to Dr. Concepción, granting her "appointment to the position of Clinical Instructor in the OB-GYN Department . . . effective as of September 1, 2006." Claiming that the appointment letter provided irrefutable evidence that Dr. Concepción had been a member of HESL's teaching faculty continuously since September 2006, defendants requested a hearing on whether she was covered by the statutory damages cap. The issue, they argued, was "a matter of law and not a matter for a Jury as this is not a matter of fact." Plaintiffs opposed the motion, arguing that it was "a matter of testimony and credibility," and thus should be decided by a jury.

Over plaintiffs' objection, the district court granted defendants' motion for a pretrial hearing "on the sole issue of whether Dr. [Concepción] was a Teaching Fellow at the time of the acts alleged in the Complaint." It again referred the matter to the magistrate judge and directed defendants to "submit evidence at the hearing (other than the 2006 contract), whether through sworn statements or witness testimony, to establish Dr. [Concepción's] position at the hospital."[2] At the hearing, the magistrate judge heard testimony on the structure of HESL's

_____

[2] "[T]he 2006 contract" appears to be a reference to the 2006 appointment letter.

- 8 -

residency program from the Director of the Graduate Program of Medical Education at HESL. The director testified that Dr. Concepción had privileges at HESL as a physician in private practice and was also a "voluntary faculty" member there. Defendants also presented as witnesses Dr. Concepción herself and a former OB/GYN resident at HESL who said he had assisted with Pérez's delivery under Dr. Concepción's supervision. Defendants additionally submitted as an exhibit a 2018 letter crafted by Ponce School of Medicine after this lawsuit was filed "certify[ing]" that Dr. Concepción had been a "Volunteer Faculty Instructor" in the OB/GYN department since 2006.

In the R&R issued after the hearing, the magistrate judge stated that "[p]laintiffs failed to present any evidence to support their position that Dr. Concepción is somehow not a member of the voluntary faculty at the Hospital and does not have a teaching faculty role at the Hospital." Deeming the defense's witnesses "credible," the magistrate judge found that "the evidence presented during the evidentiary hearing, which was uncontroverted, showed that, at all times relevant to the Complaint, and at least as far back as September 1, 2006, Dr. Concepción was a member of the voluntary faculty at the Hospital." While the magistrate judge referred to the question before him as "the factual question of whether [Dr. Concepción] was a member of the teaching faculty of [HESL] at the time of the

acts alleged in the complaint," he also stated that "[t]he applicability of the statutory cap is a matter of law."

Plaintiffs objected to the R&R, again arguing that whether Dr. Concepción was a member of the volunteer faculty was a factual question "within the province of the Jury" and that the R&R had inappropriately shifted the burden away from defendants. Over these objections, the district court adopted the magistrate judge's R&R in full, finding that Dr. Concepción "was a member of the teaching faculty of [HESL] during the relevant time and is, therefore, covered by the statutory cap on damages under [Law 136]." In addition to "the lack of evidence to the contrary," the court was persuaded by the February 2018 certification, which "implie[d] she ha[d] been a faculty member in the residency program uninterruptedly" from 2006-2018, and testimony that Dr. Concepción was supervising medical residents during Pérez's delivery. Plaintiffs, the district court concluded, "ha[d] not shown the existence of a genuine issue of fact that would require that the matter be submitted to a jury."

Following the district court's order, the parties entered into a "high-low" agreement in which they settled, but plaintiffs "reserve[d], preserve[d] and maintain[ed] their rights to appeal" the district court's order.[3] To that end, the parties

---

[3] Though the parties have reached a settlement agreement, the case presents a live issue because "[t]he limited

- 10 -

stipulated that the questions presented on appeal would be (1) whether the district court erred by holding an evidentiary hearing to decide the applicability of the liability cap and (2) whether the district court erred in finding factually that the liability cap applied.  They agreed that defendants would pay plaintiffs an additional $250,000 if this court finds in favor of plaintiffs and remands the case.  This appeal ensued.

## II.

The district court essentially concluded that there was no genuine issue of material fact concerning Dr. Concepción's status as a member of HESL's teaching faculty.  The order thus resembles a partial grant of summary judgment in favor of defendants.  See Fed. R. Civ. P. 56(a).  Given this resemblance, we review the district court's decision de novo.  See Alberty-Vélez v. Corporación de P.R. para la Difusión Pública, 242 F.3d 418, 422 (1st Cir. 2001) ("draw[ing] on the law applicable to [partial summary judgment] orders" to "guide . . . analysis" of a pretrial order narrowing the scope of trial, since the two types of orders serve similar functions).

---

agreement . . . left both [parties] with a considerable financial stake in the resolution of the question presented in this Court." Nixon v. Fitzgerald, 457 U.S. 731, 744 (1982).

The Supreme Court has long noted "the vexing nature of the distinction between questions of fact and questions of law." Pullman-Standard v. Swint, 456 U.S. 273, 288 (1982). It has not articulated any "rule or principle that will unerringly distinguish a factual finding from a legal conclusion." Id. Adding to the confusion is that many questions do not fall neatly to one side of the law/fact binary. The applicability of the statutory cap in this case touches on both legal and factual elements. Nonetheless, for the reasons that follow, we hold that the threshold determination of Dr. Concepción's relationship with HESL in 2015 is a question of fact requiring a jury finding.

Courts frequently confront questions that contain both factual and legal elements. For example, in Torres Vargas v. Santiago Cummings, our circuit parsed the legal and factual aspects of an immunity dispute closely related to the one now before us. 149 F.3d 29 (1st Cir. 1998). The issue was whether an anesthesiologist accused of malpractice was an employee of the Puerto Rico Department of Health and thus immune from suit as a Commonwealth employee. Id. at 31.

At the time, Puerto Rico law provided that:

- 12 -

> No health service professional may be included as a defendant in a civil suit for damages due to malpractice caused in the performance of his profession <u>while said health service professional acts in compliance with his/her duties and functions as an employee of the Commonwealth of Puerto Rico</u>, its dependencies, instrumentalities and municipalities.

P.R. Laws Ann. tit. 26, § 4105 (1996) (emphasis added)). The Puerto Rico Supreme Court had also made clear that physicians who were merely independent contractors of the Commonwealth were not entitled to immunity under section 4105. See <u>Nieves</u> v. <u>Univ. of P.R.</u>, 7 F.3d 270, 279 (1st Cir. 1993) (construing <u>Flores Román</u> v. <u>Ramos Gonzalez</u>, 127 P.R. Dec. 601, 611 (1990)).

In response to the malpractice allegations against him, the anesthesiologist in <u>Torres Vargas</u> moved for summary judgment claiming that section 4105 immunized him from suit. 149 F.3d at 31. Attempting to prove his employment, the doctor provided his contract with the Health Department. The contract obligated him to render services each weekday at a government hospital for one year, but did not contain the types of compensation and benefits agreements "characteristic of a modern employer-employee relationship." <u>Id.</u> at 34. Plaintiffs argued that the contract established either that the anesthesiologist was an independent contractor for the Health Department (and thus outside the protections of the statute) or that his employment status was a question of fact for trial. <u>Id.</u> at 31.

Though the district court granted summary judgment to the anesthesiologist, this court vacated the judgment.  Id. at 36. The contract "by itself," we concluded, did "not support the district court's finding that as a matter of law the defendant was an employee of the Commonwealth entitled to immunity under section 4105."  Id. at 35.  Rather, while the threshold question of whether the contract was ambiguous "present[ed] a question of law for the judge," the evaluation of "extrinsic evidence relevant to the interpretation" of the contract presented questions of fact that precluded summary judgment.  Id. at 33 (internal quotations omitted).  To that end, we explained that the contract was a "mixed bag":  Some of its features suggested that the doctor was an employee of the Commonwealth, but others -- including the extent to which he was under the control of the Health Department -- "remain[ed] very much open to debate."  Id. at 35.  Because "the call [was] not free from doubt," and required "probative evidence of the facts," summary judgment was inappropriate.  Id. at 34, 35.

A similar conclusion fits here, even more snuggly.  In theory, whether one is a faculty member performing a teaching duty within the meaning of Law 136 is a mixed question of fact and law. Factually, what is the agreed-upon relationship with the hospital, and what was the person doing on the relevant occasion?  Legally, is that relationship that of a "faculty member" within the meaning of the statute, and is certain conduct "teaching"?  Here, though,

- 14 -

we have a simpler case. No one disputes the legal test for determining whether a given person is a faculty member covered by the statute's limitation on damages, or that all members of the hospital's faculty meet that test. The dispute, instead, trained on whether Dr. Concepción was in fact a member of the hospital's faculty in April of 2015. As so presented, the issue is one to be decided as a matter of fact.

Of course, if the evidence on a factual issue is so one-sided that there is no room for reasonable dispute, a court can decide the issue, for example by granting summary judgment. But "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We find that the factual dispute about Dr. Concepción's status at the hospital is genuine under this standard.

On the one hand, Dr. Concepción has presented testimony that her employment as a volunteer faculty member at HESL began in 2006 and continued uninterrupted through the evidentiary hearing in May 2022. She pointed to the two letters from Ponce School of Medicine as documentation of her status as a faculty member. She also presented testimony from several witnesses associated with the hospital stating that she was a faculty member.

On the other hand, the hospital's initial description of Dr. Concepción made no mention of her status as a faculty member, the 2006 letter was belatedly produced under circumstances that could be seen as raising a question about its authenticity and applicability to 2015, and the 2018 "certification" letter was crafted and produced only after this litigation began. Furthermore, the two letters are inconsistent regarding Dr. Concepción's title. While the 2006 letter appoints her "to the position of Clinical Instructor," the 2018 letter certifies that she has been a "Volunteer Faculty Instructor" since 2006. And finally, no actual contract was ever produced, even though Dr. Concepción testified that she signed one every year to "continue[]" her "voluntary status" with the residency program.

The magistrate judge and the district court found that this evidence as a whole cut in the defendants' favor. In so finding, the magistrate judge and the district court found Dr. Concepción and her witnesses "credible" and the absence of opposing witnesses telling. Our task is not to decide whether these findings were correct. Rather, the pivotal question is whether a reasonable jury could conclude otherwise.

The answer is yes. The absence of evidence affirmatively showing that Dr. Concepción is <u>not</u> a faculty member is not dispositive. The burden to prove the applicability of the cap was

- 16 -

on the defendants.[4]  And in any event, one charged with proving a negative often relies on simply disproving the affirmative.  We agree, too, that a reasonable factfinder could share the magistrate judge's view that the absence of any contract when contracts were claimed to have been used annually was "curious" -- enough so to provide a basis for a contrary finding if the factfinder did not find the witnesses credible.  All in all, we are convinced that the evidence was not one-sided enough to compel the district court's conclusion that Dr. Concepción held a teaching position at the hospital.

### C.

Having found that whether Dr. Concepción was a member of HESL's volunteer faculty at the time of AMCP's birth was a question of fact that could be resolved either way, we must conclude that it was improperly taken from the jury.  Though Puerto Rico does not use juries for civil questions, it is well established that the Seventh Amendment "most decidedly affords litigants in federal court in Puerto Rico the right to trial by jury."  Marshall v. Perez Arzuaga, 828 F.2d 845, 849 (1st Cir. 1987) (citing LaForest v. Autoridad de las Fuentes Fluviales de P.R., 536 F.2d 443, 446-

---

[4]  The damages cap, like the section 4105 immunity discussed in Torres Vargas, is an affirmative defense.  As in Torres Vargas, then, "the defendant bears the burden of establishing its applicability."  149 F.3d at 35.  As such, it is Dr. Concepción's burden to show that she is covered by the cap.

47 (1st Cir. 1976)).  Even in diversity cases applying Commonwealth law, then, "it is federal law that must control the division of responsibility between judge and jury."  Id.

Heeding the "command" of the Seventh Amendment, federal law "assigns the decisions of disputed questions of fact to the jury."  Byrd v. Blue Ridge Rural Elec. Co-op., Inc., 356 U.S. 525, 537 (1958).  To that end, district courts are "not free to weigh the parties' evidence or the reasonable inferences that might be drawn from that evidence by the jury."  9B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2524 (3d ed. 2024).  Rather, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."  Anderson, 477 U.S. at 255.[5]

Given these parameters, we find that in weighing the evidence and making credibility findings, the district court veered into territory reserved for juries.

## IV.

For the foregoing reasons we vacate the order declaring defendants covered by the statutory damages cap and remand the

---

[5] Courts may, however, decide without a jury "any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible."  Fed. R. Evid. 104(a).  The dispute over Dr. Concepción's status at the hospital does not fall under this carveout because its resolution goes directly to the merits of the case.

matter for proceedings consistent with this opinion.  The parties shall bear their own costs.